# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 10, 2010

Charles R. Fulbruge III
Clerk

No. 08-20779

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

KAREY BERNARD STATIN,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:07-CR-141-1

Before REAVLEY, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Karey Statin was indicted for crimes arising out of his tax preparation business. On appeal, he challenges the sufficiency of the evidence and claims sentencing errors. We AFFIRM the conviction and the sentence.

## BACKGROUND

Karey Statin was the sole proprietor of a tax preparation business called Quick-Tax in Houston, Texas. On April 12, 2007, Statin was indicted on fifteen counts of aiding and abetting the preparation of false tax returns between 2000

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 08-20779

and 2002 in violation of 26 U.S.C. § 7206(2). Counts One through Eight charged Statin with including false income claims on Schedule C of Form 1040 so that the taxpayers identified in these counts appeared to earn more income than they actually earned in the tax year in question. By including false income claims on a taxpayer's Schedule C, the taxpayer received more earned income credit ("EIC"), and potentially a larger refund, than was legitimate. Counts Nine through Fifteen charged Statin with overstating or fabricating deductions on Schedule A of Form 1040 so that the taxpayers identified in these counts received unjustified itemized deductions.

Statin was tried by a jury in January 2008. His counsel moved for a judgment of acquittal on all counts at the end of the government's case-in-chief, and then again at the close of trial. These motions were denied. On January 11, 2008, the jury returned guilty verdicts on all fifteen counts.

Following the conviction, Statin submitted separate motions for a judgment of acquittal and for a new trial based on the government's failure to present sufficient evidence to sustain the convictions on each of the fifteen counts. These motions were also denied.

On November 4, 2008, Statin was sentenced to terms of thirty-six months on Counts One through Eight, to be served concurrently, and fifteen months on Counts Nine through Fifteen, to be served concurrently with each other but consecutively to the sentences for Counts One through Eight.

Statin alleges the district court erred in denying his motions for acquittal because the evidence was insufficient to sustain convictions on any of the fifteen counts. He also contests the district court's calculation of his sentence range and the reasonableness of the sentence issued.

No. 08-20779

DISCUSSION

*A.    Sufficiency of the Evidence*

A motion for judgment of acquittal calls on the district court to make a legal conclusion that the evidence is insufficient; the denial of the motion is therefore reviewed on appeal as are other legal issues, namely, *de novo. United States v. Clayton*, 506 F.3d 405, 412 (5th Cir. 2007).

Guilt has been sufficiently shown when, "viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the offenses beyond a reasonable doubt." *United States v. Clark*, 577 F.3d 273, 284 (5th Cir. 2009) (citations omitted). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *Id.* (citations omitted). Jurors are "free to choose among reasonable constructions of the evidence" in order to arrive at a verdict. *Id.* (citation omitted).

*(1)    Tax Form 8453*

Statin argues that his actions do not support conviction because he relied on a Form 8453 signed by each taxpayer identified in the indictment. He claims that a signed Form 8453 creates a presumption that the information it contains was provided by the taxpayer and was "true, correct, and complete."

A Form 8453 summarizes the information contained on the taxpayer's Form 1040. Each Form 8453 contains the following declarations, signed by the taxpayer, the electronic return originator ("ERO"), and the tax preparer:

> Taxpayer Declaration: Under penalties of perjury, I declare that the information I have given my ERO and the amounts in Part I above

No. 08-20779

agree with the amounts on the corresponding lines of the electronic portion of my [year] Federal income tax return. To the best of my knowledge and belief, my return is true, correct, and complete. . . .

ERO Declaration: I declare that I have reviewed the above taxpayer's return and that the entries on Form 8453 are complete and correct to the best of my knowledge. . . .

Tax Preparer Declaration: Under penalties of perjury, I declare that I have examined the above taxpayer's return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. This declaration is based on all information of which I have any knowledge.

Statin signed both the ERO declaration and the tax preparer declaration on each Form 8453. At trial, it was shown that each taxpayer identified in the indictment signed a Form 8453. Statin provides no supporting authority for his argument that the signed Form 8453 creates a presumption that the taxpayers provided him with all the information contained on their Form 1040s and the accompanying schedules. Without such a presumption, he claims, it would be too easy for a taxpayer faced with an audit or criminal charges to blame the tax preparer for the false information included on the taxpayer's Form 1040.

The point has some validity. We disagree, though, with the conclusion that his convictions must be reversed because the government's evidence was insufficient to rebut the presumption created by the signed Form 8453s. Even if a signed Form 8453 creates the presumption suggested by Statin, the government's evidence was sufficient to rebut it. Our later discussion will detail some of Statin's personal actions, revealing him to be more than simply an automaton transferring data provided by the taxpayers to their Form 1040s.

4

No. 08-20779

*(2)    Sufficiency of the Evidence*

All fifteen counts alleged in the indictment charged Statin with aiding and abetting the preparation of false tax returns. The statute under which he was charged states this:

> Any person who . . . [w]illfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document . . . shall be guilty of a felony . . . .

26 U.S.C. § 7206(2). Statin's convictions will be sustained if, under the standard already articulated, rational jurors could have found the following elements beyond a reasonable doubt: (1) Statin "aided, assisted, counseled, or advised another in the preparation" of the tax return in question; (2) the tax return contained a statement falsely claiming income, deductions, or tax credits; (3) Statin knew that the statement was false; (4) the false statement was material; and (5) Statin acted willfully. *Clark*, 577 F.3d at 285; *see also* FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL CASES) § 2.97 (West 2001).

We start our assessment by addressing the sufficiency of the evidence on the first, second, and fourth elements. This will be followed by a lengthier analysis of the third and fifth elements.

The first element simply requires joining Statin factually to a return. It is satisfied if a rational jury could have found that Statin assisted the taxpayers in preparing the tax returns identified in the indictment. For nine of the counts, the taxpayers were able to identify Statin as the person who assisted in preparing the tax returns. For the other six counts, the taxpayers could not

## No. 08-20779

specifically identify Statin as the tax preparer. However, the Form 8453 accompanying each of the fifteen tax returns contained Statin's signatures and unique ERO number. Viewing this evidence in the light most favorable to the verdict, a rational jury could have found beyond a reasonable doubt that Statin assisted the taxpayers in preparing all of the identified tax returns.

The second element is satisfied if a rational jury could have found that the tax returns contained statements falsely claiming income, deductions, or tax credits. The evidence shows that for each of the fifteen counts, the relevant taxpayer testified that there was at least one false statement concerning claimed income or deductions in the tax returns.[1] There was sufficient evidence that each tax return contained a false statement.

The fourth element is satisfied if a rational jury could have found that the false statement in the tax return was material. The requirement of materiality assures that what is criminalized are statements that could mislead the IRS into accepting the false return. For the purpose of Section 7206(2), a false statement is material if it has "a natural tendency to influence, or [is] capable of influencing, the decision or the decisionmaking body to which it was addressed." *Neder v. United States*, 527 U.S. 1, 16 (1999) (alteration in original) (quoting *United States v. Gaudin*, 515 U.S. 506, 509 (1995)). The government agency does not need to be shown to have relied on the statement and may even have ignored it. *United States v. Puente*, 982 F.2d 156, 159 (5th Cir. 1993).

Of the returns identified in Counts One through Eight, two were audited; in another one, the IRS identified the false claims before a refund was ever

---

[1] Statin argues that certain witnesses were not credible. However, determining witnesses' credibility is in the province of the jury. *United States v. Casilla*, 20 F.3d 600, 602 (5th Cir. 1994).

issued to the taxpayer. As for the remaining five tax returns, all included similar false claims of income as did those returns that were audited. A rational jury could have found the materiality element beyond a reasonable doubt in these counts.

Similarly, two of the tax returns identified in Counts Nine through Fifteen were audited. In addition, an IRS witness testified that each of the remaining five tax returns contained claims for impermissible deductions. Thus, these five returns could have been subjected to an audit. A rational jury could have found the materiality element beyond a reasonable doubt in these counts.

We now turn to whether the evidence is sufficient to support findings beyond a reasonable doubt concerning the third and fifth elements, which are that Statin knew the statements were false and acted willfully.

A defendant's knowledge and willfulness often must be shown by circumstantial evidence. *See United States v. Rodriguez*, 132 F.3d 208, 212 (5th Cir. 1997). The government argues that knowledge and willfulness are shown by various acts that were proven at trial.

According to the government, the evidence established that Statin included false information in the tax returns. For each taxpayer, Statin asked questions that allowed him to manipulate the return in a manner unlikely to draw the IRS's attention. By including false statements reasonably related to the taxpayers' actual work or activities, Statin purposefully established plausible deniability should he ever come under IRS scrutiny.

In addition, the government argued that to manipulate EIC correctly required a sophisticated understanding of this part of the tax code. An IRS witness explained at trial that the EIC is a refundable tax credit included on

No. 08-20779

Form 1040. If a taxpayer's EIC exceeds total tax liability, the overage is sent to the taxpayer as a refund. EIC rises with the taxpayer's income, reaches a plateau, and then falls back to zero as the taxpayer's income continues to rise. Therefore, for taxpayers with income below the plateau level, reporting additional income actually *increases* EIC, which in turn decreases tax liability and increases the probability, and potential amount, of a refund. The government argues that this provision is counterintuitive, *i.e.*, that a taxpayer with little income could potentially receive a larger refund by *adding* a certain amount of income.[2]

Based on that premise, the government claimed that the false statements of income "on the first eight counts of the indictment were not made by accident, by mistake, or some unfortunate miscommunication between taxpayer and Mr. Statin." Rather, the evidence showed that a sophisticated mind was behind the manipulation. The only reasonable inference to be drawn, therefore, was that Statin, and not the individual taxpayers, overstated the Schedule C income on the tax returns by precisely the right amount to maximize EIC.

Furthermore, the government argued that a person with enough tax code sophistication to manipulate EIC is certainly sophisticated enough to know what cannot legitimately be claimed as an itemized deduction. Due to the taxpayers' lack of sophistication and the high level of sophistication allegedly possessed by Statin, the government argued that the most reasonable inference to be drawn from the evidence was that Statin knowingly overstated, and in some instances fabricated, deductions on the taxpayers' returns.

---

[2]    Adding too little or too much Schedule C income would have placed the taxpayers' total income levels on either side of the EIC plateau, which would have resulted in a lower EIC, and likely a lower refund.

No. 08-20779

Based on the totality of the evidence and the reasonable inferences that could be drawn, the government argued that Statin must have knowingly included the false statements in the taxpayers' tax returns, and also willfully violated Section 7206(2).

Statin countered these inferences. Statin alleges the evidence shows that the taxpayers provided the unknowing Statin with the false information. The defense dismissed as self-serving the taxpayers' testimony that they did not provide Statin with the false information, particularly in light of the signed Form 8453s. The defense also reminded jurors that some of the taxpayer witnesses were unable to remember details of their tax preparation meetings, and may have forgotten what they told Statin.

The defense stressed that the government never presented any evidence that Statin had been trained in tax preparation or that he knew what constituted a violation of Section 7206(2). Therefore, Statin could not willfully violate Section 7206(2) because he did not know what this section prohibited.[3]

Finally, the defense argued that the taxpayers *were* sophisticated, and would not have allowed Statin to include false information on their tax returns. Statin's work may have included mistakes, but they did not rise "to the level of criminality. Maybe negligence, maybe gross negligence, but it is not willful."

Jurors here had competing explanations of the evidence. They were free to select among the reasonable inferences in order to arrive at a verdict. *Clark*, 577 F.3d at 284. Jurors implicitly chose to accept the government's theory of the case. Viewing the evidence in the light most favorable to the verdict, a rational

---

[3] Statin was not a novice tax preparer just learning the business. During a 2003 search of Quick-Tax by the IRS, Statin told the IRS agents that he had been involved in taxes for over eighteen years and had been "empowering people with knowledge" for that long.

No. 08-20779

juror could have found the knowledge and intent elements of this crime beyond a reasonable doubt.

There was no error when the district court denied Statin's motions for judgment of acquittal.

### B.    Guidelines Range Calculation

Statin was sentenced to terms of thirty-six months on Counts One through Eight, to be served concurrently, and fifteen months on Counts Nine through Fifteen, to be served concurrently with each other but after the sentences for Counts One through Eight.  Thus, he was sentenced to a total of fifty-one months, which was the top of the forty-one months to fifty-one months guidelines range calculated by the district court.

Sentences both inside and outside the Guidelines range are reviewed for abuse of discretion.  *Gall v. United States*, 552 U.S. 38, 51 (2007).  Initially, the appellate court determines whether the district court committed any significant procedural error;  if the district court's decision is procedurally sound, the court then considers the substantive reasonableness of the sentence imposed.  *Id.* The district court's interpretation and application of the Sentencing Guidelines are reviewed *de novo*; generally, its factual findings are reviewed for clear error. *United States v. Klein*, 543 F.3d 206, 213 (5th Cir. 2008).

Statin argues the district court erred in calculating his sentence range in the following ways:  (1) by including tax harm amounts from counts that should have been granted a judgment of acquittal; (2) by including tax harm amounts from returns not identified in the indictment; (3) by imposing an obstruction of justice enhancement pursuant to U.S.S.G. § 3C1.1; and (4) by violating the Sixth Amendment.

10

No. 08-20779

Because we have held already that there was sufficient evidence to sustain all fifteen convictions, we reject Statin's first argument.

Next, we turn to whether the district court erred by including relevant conduct in its loss calculation. A district court may find the relevant conduct occurred by a preponderance of the evidence. *United States v. Loe*, 262 F.3d 427, 437 (5th Cir. 2001). We review that finding for clear error. *Id.*

To determine the loss calculation for sentencing purposes, the Presentence Report included a four-page chart listing the tax harm associated with the returns identified in the indictment as well as the tax harm associated with other returns that were part of Statin's relevant conduct. *See* U.S.S.G. § 1B1.3(a)(1)(A). The loss calculation from all the tax returns listed in the chart was $155,427. Statin raises several objections to this chart.

First, he argues that the statute of limitations would preclude the government from prosecuting him for violations associated with three tax returns from 1998 and 1999. According to Statin, that fact required exclusion of the tax harm from these returns from the loss calculation. However, "there is no separate statute of limitations beyond which relevant conduct suddenly becomes irrelevant," and "a defendant's prior conduct will not necessarily be placed off limits simply because of a lapse of time." *United States v. Rhine*, 583 F.3d 878, 886 (5th Cir. 2009) (citations and internal quotations omitted). There is close temporal proximity between the relevant conduct in 1998 and 1999 and the tax returns identified in the indictment, which ranged from 2000 through 2002. It was not error to include the 1998 and 1999 tax returns in relevant conduct for the purpose of calculating tax loss.

No. 08-20779

Second, Statin claims that many of the returns on the chart were only subject to a criminal investigation and not to an audit. Statin notes that the IRS agent's testimony was that criminal investigators have different skills. Statin argues that there was no showing that the criminal investigators had the skill to determine the proper amount of tax harm. Similarly, he argues that some of the returns identified in the indictment were not subject to either an audit or a criminal investigation. He argues the tax harm on these returns is "defective particularly where there is insufficient evidence."

Statin does not cite any authority suggesting that the calculation of tax harm requires an audit or criminal investigation. The Presentence Report explains that the IRS analyzed each of the tax returns listed in the chart, compared each to the return that should have been filed, and arrived at the tax harm by calculating the difference. The district court is entitled to rely on the information in the Presentence Report as long as the information bears some indicia of reliability. *United States v. Shipley*, 963 F.2d 56, 59 (5th Cir. 1992). The defendant has the burden to demonstrate that the information on which the district court relied was materially untrue. *Id.* Statin did not so demonstrate.

Statin also argues that the chart does not indicate if the tax harm from the returns comprising the relevant conduct was from Schedule C inclusions, Schedule A deductions, or something else. However, Statin does not explain why such a distinction would be relevant for calculating loss.

Finally, Statin argues that his Sixth Amendment rights were violated because the jury did not find all the elements of the relevant conduct beyond a reasonable doubt. However, elements of relevant conduct need only be found by the district court by a preponderance of evidence. *See United States v. Johnson*,

No. 08-20779

445 F.3d 793, 798 (5th Cir. 2006). As discussed above, the district court is entitled to rely on the factual findings stated in the Presentence Report as long as there is some indicia of reliability. *Shipley*, 963 F.2d at 59. Statin did not carry his burden to demonstrate that those facts were materially incorrect.

We now address Statin's claim that the district court erred by applying the obstruction of justice enhancement. *See* U.S.S.G § 3C.1. The Presentence Report recommended application of the enhancement for the following reasons: (1) Statin attempted to get a former client to sign a false affidavit in an effort to undermine the testimony of one of the taxpayer-witnesses; (2) Statin got one of the taxpayer-witnesses to sign a letter falsely stating that a former client owned an auto detail shop; that person then contacted Statin and told him not to use the letter because it was false; (3) Statin told his clients not to respond to summonses sent by the IRS in connection with this investigation; and (4) Statin provided the probation officer with false information concerning his three previous convictions for driving under the influence.

Statin objected to the enhancement recommendation in a motion and at the sentencing hearing. However, the district court adopted the Presentence Report in its entirety, including the obstruction enhancement recommendation.

Application of a sentencing enhancement based on obstruction of justice is reviewed for clear error. *United States v. Johnson*, 352 F.3d 146, 147 (5th Cir. 2003). The "finding of obstructive conduct must be plausible in light of the record as a whole." *Id.* Under this standard, this court is precluded from reversing the district court's findings unless the court is "left with the definite and firm conviction that a mistake has been committed." *Jauch v. Nautical*

13

No. 08-20779

*Servs.*, 470 F.3d 207, 213 (5th Cir. 2006) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985)).

We earlier summarized the government's evidence. Statin did not present any rebuttal evidence demonstrating that the information was materially false. The enhancement was validly applied.

Statin's final argument, based on the Sixth Amendment, is foreclosed. This circuit has already held that a district judge and not a jury may make the fact-findings necessary for sentencing. *Johnson*, 445 F.3d at 798.

The district court did not err in calculating Statin's sentencing range.

*C.    Reasonableness of Sentence*

Statin also argues that his sentence is unreasonable. His arguments are these: (1) the underlying conviction that formed the basis of his convictions only involved $19,099 in tax loss; (2) the four-level enhancement for tax loss overstates the severity of the crime; (3) Statin needs to provide for his family as shown in his request for a downward departure; (4) the district court failed to adequately explain why it rejected Statin's mitigating arguments for a lesser sentence; and (5) the district court failed to justify the sentence based on the factors set out in 18 U.S.C. § 3553(a).

The government argues that plain error review should apply to the determination of whether Statin's sentence is reasonable. That is because Statin failed to object to reasonableness at the sentencing hearing. Statin disagrees. He argues that "his written objections, assertions of innocence, requests for mitigation and downward departure, argument at sentencing, the filing of his Motion for Bond Pending Appeal, and [ ] his Motion for Reconsideration for Bond Pending Appeal" constituted objections to the reasonableness of his sentence.

14

No. 08-20779

However, Statin claims that his sentence should be vacated even under plain error review.

Defense counsel's actions at the sentencing hearing did not amount to an objection to the reasonableness of his sentence. *See United States v. Peltier*, 505 F.3d 389, 391-92 (5th Cir. 2007) (requiring an objection to reasonableness after pronouncement of sentence to adequately preserve error). Therefore, we will apply plain error review. *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 n.2 (5th Cir. 2009). Under this standard, Statin's sentence may only be corrected if: "(1) there is an error (and in light of *Booker*, an 'unreasonable' sentence equates to a finding of error); (2) it is plain; and (3) it affects substantial rights." *Peltier*, 505 F.3d at 392 (citation omitted).

At sentencing, the district court explained its reasons for giving Statin a sentence at the high end of the Guidelines range. Discussed was the need to impose a sentence that accurately reflected the severity of the crime. Even if the obstruction enhancement did not apply, the court said it "would nonetheless arrive at a fifty-one month sentence under 3553A." In addition, Statin's appeal for a downward departure in order to take care of his granddaughter was unpersuasive. Family hardship is almost always a consequence of incarceration, the court said, but it "doesn't take this case out of the heartland," and there were other individuals who could care for his granddaughter.

This court infers that the district court has considered all factors for a fair sentence when a sentence is imposed within a properly calculated Guidelines range. *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005). There is great discretion given to the sentencing judge, and "it will be rare for a reviewing court to say such a sentence is 'unreasonable.'" *Id.* Statin has not demonstrated that

15

No. 08-20779

this is one of the rare cases in which a sentence within a properly calculated Guidelines range should be found unreasonable. Accordingly, Statin's sentence is not unreasonable.

Statin's conviction and sentence are AFFIRMED.